E-FILED
Friday, 30 October, 2026 02:05:35 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **TRENT WARREN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-2008** |
| | ) | |
| **VERMILION COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint filed under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., by Plaintiff Trent Warren, an inmate at Graham Correctional Center. Plaintiff also filed a Motion for Status (Doc. 11).

## I. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. When reviewing a complaint, the court accepts the factual allegations as accurate and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## II. Facts Alleged

The violations Plaintiff describes occurred while he was a detainee at the Vermilion County Jail ("Jail"), and are alleged against the City of Danville, Vermilion County Sheriff's Office, and Patrick Hartshorn, in his official capacity as the Vermilion County Sheriff.

Plaintiff explains that on July 6, 2025, an accident caused him to be ejected from a vehicle. As a result, Plaintiff required two surgeries on his left ankle and the implementation of an external fixation device for stabilization. Plaintiff also had a cast applied for a fracture on his left wrist. Plaintiff states that his injuries affected his ability to perform basic life functions such as bathing, dressing, eating, and relieving himself, which at that time was being provided by a friend. Plaintiff had access to a wheelchair and specialized walker that allowed him to avoid putting weight on his left wrist, as his physician instructed.

On August 26, 2025, Plaintiff entered the Jail. At that time, Plaintiff's mobility was still compromised. However, Plaintiff claims he was denied access to compliant showers, meals, mobility assistance devices, recreational services, and the use of a telephone because of his disability.

## III. Analysis

"In 1990, Congress enacted the [Americans with Disabilities Act] to provide 'a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Lacy v. Cook County*, 897 F.3d 847, 852 (7th Cir. 2018) (quoting 42 U.S.C. § 12101(b)(1)). "To prove a prima facie case of discrimination under

Title II, a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability." *Id.* at 853 (internal quotation marks omitted) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)).

A Rehabilitation Act claim is functionally identical to an ADA claim. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Both require the plaintiff to allege that "'(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability.'" *Id.* (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)); *see also Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) ("[T]he Rehabilitation Act and the ADA are substantively identical" which "means that the Rehabilitation Act by itself affords plaintiffs any relief to which they may be entitled; claims under the ADA become academic.").

"[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros*, 684 F.3d at 671. "As a practical matter, then, [courts] may dispense with the ADA and the thorny question of sovereign immunity, since [a plaintiff] can have but one recovery." *Id.* at 672. "Illinois has waived its immunity from suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds." *Id.* 672 n.5.

To win compensatory damages under the ADA or Rehabilitation Act, a plaintiff

must also offer evidence that the [IDOC] was intentionally discriminatory or at least deliberately indifferent to its violation. *Lacy*, 897 F.3d at 862–63 (agreeing with most circuits that deliberate indifference is sufficient to prove intentional discrimination under failure-to-accommodate claims). "That requires 'both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.'" *McDaniel v. Syed*, 115 F.4th 805, 823 (7th Cir. 2024) (quoting *S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 263 (3d Cir. 2013) (internal quotation omitted).

The Court concludes that Plaintiff's account is sufficient to state a Rehabilitation Act claim against Defendant Hartshorn in his official capacity only. *See Keeling v. Lake County*, 2024 WL 197210 (N.D. Ill. Jan. 18, 2024) (concluding that all that is required are facts that establish the movant had a disability, a failure to accommodate the disability, and resulting harm).

The Court *sua sponte* adds Vermilion County for purposes of indemnification. In Illinois, a county "is a necessary party to a suit against a Sheriff under federal law." *Olson v. Champaign County*, 784 F.3d 1093, 1104 (7th Cir. 2015).

> [U]nder Illinois law a sheriff, in his or her official capacity, has the authority to settle and compromise claims brought against the sheriff's office. Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity.

*Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) (quoting *Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127, 141 (Ill. 2003)). As such, "a county in Illinois is a

necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver*, 324 F.3d at 948. "Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Id.*

Therefore, the Court dismisses the City of Danville and the Vermilion County Sheriff's Office as parties. Plaintiff's Motion for Status (Doc. 11) is moot with the entry of the Court's Order.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Status (Doc. 11) is MOOT.**

2) **According to the Court's merit review of Plaintiff's complaint (Doc. 1) under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with his ADA claim against Defendant Hartshorn in his official capacity only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

3) **The Court directs the Clerk of the Court ("Clerk") to terminate the City of Danville and Vermilion County Sheriff's Officer as parties.**

4) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

5) **The Court will attempt service on Defendant by mailing Defendant a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

6) **Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall**

**submit to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

7) **Defendant shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered.**

8) **This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendant's counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.**

9) **The Court grants Defendant's counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.**

10) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

11) **If Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant pay the full costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

12) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

13) **The Court directs the Clerk to attempt service on Defendant under the standard procedures.**

ENTERED October 30, 2026.

s/ *Colleen R. Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE